Our next case is Engstrom v. United Airlines, appeal number 25-1039. I think Mr. McCoy is remote. Good morning, Your Honors. Hold on one second. Hold on one second, Mr. McCoy. Okay, go ahead. You can begin. I appreciate that. Nathan McCoy, on behalf of the appellants, James Engstrom and Richard Shaw. May it please the Court. This appeal challenges the District Court's abuse of discretion in denying leave to a file a third amended complaint under Rule 15a's liberal standard. The Court erred by finding the third amended complaint's Title VII claims futile. Overemphasizing a delay without evidence of any prejudice and penalizing prior procedural amendments and strategic decisions under Foman v. Davis. Under Foman v. Davis, amendments should be freely given absent bad faith or harm, neither of which apply here. There are three issues I will address. First, the third amended complaint's plausible Title VII claims. Second, the lack of undue delay or prejudice. Third, the justification for prior amendments. I'd like to reserve one minute and 30 seconds for rebuttal, and I welcome your questions. So turning to the first issue, the third amended complaint's Title VII claims are not futile. On failure to accommodate, the third amended complaint alleges sincere Christian prayer-based objections to United's vaccine mandate. This court in Passarella recently held that sincerity, not doctrinal specificity, suffices at pleading. So sincerity challenges are for discovery or summary judgment. My clients weren't asking for special treatment here. They just wanted to keep working without losing pay. Instead, United put them on unpaid leave, causing lost wages and seniority, which Horton-Sweetner says isn't fair unless it burdens the company. And here it did not. United had unvaccinated pilots flying before implementation of their policy, and it allowed unvaccinated pilots from other airlines to ride jump seat post-implementation. Second, with regard to disparate treatment, the third amended complaint alleges that while vaccinated pilots kept their jobs, my clients were sidelined because of their faith. Now, that's a red flag under Ventures versus the City of Delphi, suggesting unfair bias, especially since United didn't engage in the interactive process to see what accommodation could be made to allow my clients to work. Now, third, with respect to disparate impact, the amended complaint identifies 2,211 exempted employees, mostly for religious reasons, who were placed on unpaid leave while vaccinated employees were working. Chicago Teachers Union requires only plausible allegations of an impact or pattern, not hard stats, which can be achieved during discovery. The court blew air by not giving my clients the opportunity to prove their case after sufficiently... Mr. McCoy, can I ask you a question regarding abuse of discretion? Yes. To find that the district court abused its discretion in not allowing the third amended complaint here, which was clearly a strategic decision by the plaintiffs, don't we just have to exercise our own discretion? Wouldn't we say in order to find that Judge Connelly abused his discretion, wouldn't we just simply be applying our own discretion, which is not the role of an appellate court? No, Your Honor, I think that the appellate court certainly has the ability to look at this in terms of the abuse of discretion and determine whether or not the lower court actually looked at the merits or just did something based upon technical grounds, which I think is what happened here. So while it's easy to say, oh, well, it's just our discretion to do this, that's not correct. We're still applying standards, and I think those standards have been set by this court in previous cases. Okay, so how did the district court abuse the very broad discretion that it has here? Sure. Well, first of all, the court actually, like I said, it looked at delay. For instance, it found delay, but that delay in itself was not something that was due to, I should say, over attempts to amend the complaint substantively. No, it was a strategic decision based to proceed on other theories that the court then dismissed. You had brought other Title VII claims against other defendants, and you had received your EEOC right to sue letter prior to filing your second amended complaint, but yet you did not bring a Title VII claim against United. And that's what the district court faulted you for and said it's unfair to United to have to defend over a two-year period against serial complaints in which plaintiffs essentially pull out of a grab bag whatever claims seem most convenient at the time. How is that an abuse of discretion? Even if we disagree with what the district court did, how did the district court abuse its discretion in doing it? Sure. Thank you, Your Honor. It's not wrong on any of those things is what I'm trying to say. Jury, and I don't disagree that the court has wide discretion to be able to dismiss cases. In this case, you can't really argue to say that it's a serial complaint. We filed three complaints, or at least prior to, initially, of course, as you mentioned, naming only the union. At that time, yes, Title VII claims were brought as were Florida civil rights claims, but we weren't even sure if those would stand or withstand against a union. Against United, yes, we had to wait our turn to be able to bring claims. The issue of not bringing the Title VII claims at the same time, again, was more kind of a procedural basis and, yes, in part strategy. But the fact of the matter is the merits of the Title VII claims have never been reviewed by this court with respect to United. I think that in itself is an abuse of discretion based upon case law. Well, that turns the abuse of discretion standard totally on its head. I mean, that totally throws out the abuse of discretion standard for district judges being able to do what it did in this case. I mean, you're asking us to say if the district court does not pass on the merits, it abuses its discretion by not allowing a Third Amendment complaint. That can't be the law. What I'm saying, Your Honor, is this, is that in looking at either liberal amendments, which is what we're supposed to be doing, that's following the law. In this case, my clients have not heard or have their actual case heard, the merits of their case heard. And so that would be the purpose here of allowing this amendment to go through. United can argue waiver or forfeiture, but the reality is that's not the case. What I'm asking is different. You may be able to convince any of the three of us or all the three of us if we were the district court judge or not. What did the district court get wrong? Can I direct you in answering to focus on prejudice? Can you tell us what the district court got wrong on the prejudice prong? Yes, Your Honor. Thank you. Yes, with regard to prejudice, there is no prejudice for United. The essence here is— How is there not prejudice? Wait, wait, wait. How is there not prejudice when you have to defend a claim over a two-year period? How is the delay alone not prejudice? It has to be. You argue that all the time, I assume, in discovery cases. When you want discovery on a particular date and your opponent says there's no prejudice to having you wait four years for discovery and you say no, the delay is the prejudice. You've made that argument before, haven't you, Mr. McCoy? Well, Your Honor, I would agree that delay in terms of discovery, yes, we have some problems. But in this case, going back to Dubitz is what we're looking at. And that holds that delay alone is insufficient absent harm. Here, there has been no harm whatsoever. When we're looking at the substance of the claims, both the Title VII and the Florida Civil Rights Act claims mirror each other. So there's been absolutely no harm whatsoever to United. There's been no discovery, which you just mentioned. This is the very beginning of the case in terms of the actual pleadings. So there has been no harm whatsoever to United at this early juncture of the case. And I notice that I'm already at the end of my time here. I'll go ahead and rest, allow opposing counsel to, of course, provide her case and save some time for rebuttal. Okay, great. Ms. Garrett. Good morning, Your Honors, and may it please the Court. Shanti Garrett on behalf of United Airlines. We ask the Court today to affirm the district court's decision denying plaintiff's motion for leave to file a third amended complaint and dismissing the plaintiff's complaint with prejudice. We believe the district court's decision should be affirmed on all grounds, but I'm going to begin this morning by addressing the decision regarding the undue delay and prejudice to United brought on by plaintiff's proposed third amended complaint, which included Title VII claims for the first time. Can you actually start with prejudice? What is the prejudice to United? Yes. When it was on notice of the Title VII claims since the EEO, charges were filed in December 2021. And it's not usual. We all know the course of civil litigation. Two years is not an unusual amount of time to be contending with complaints and amendments. And where we just ended, the case is at the pleading stage. No discovery had been conducted. So can you specifically talk about the prejudice to United there? Yes, of course, Your Honor. So the prejudice to United stems back to the fact that this is not a case where plaintiffs didn't know about their Title VII claims when they filed their second amended complaint. They knew about these claims and they knew about their statutory filing deadline. But they chose not to file these claims. So in terms of Your Honor's questions about notice, what was the notice to United? United knew that they had filed Title VII claims with the EEOC. United knew that those Title VII claims were supposed to be filed by, I believe it was March 19 of 2024, which was about five months earlier than they actually filed the claims. And then when they didn't bring those claims in a timely manner, United was on notice that they didn't intend to bring them. But what's the prejudice? Because I understand the Florida Civil Rights Act claim was virtually based on the same set of facts, right? What's the prejudice? At that point for United when there's been no discovery, correct? Yeah. I mean, what's the prejudice? So the prejudice is that essentially plaintiffs were just holding their Title VII claims back. They were playing a strategic game, a tactical game, where they were holding their Title VII claims back just in case they needed to raise them at some later point in the case, which it turns out that they did when their Florida Civil Rights Act claims were dismissed. And it was not an abuse of discretion for the district court to then conclude that it was prejudicial for United to have to brief repeated dismissal motions and show its hand each time to the plaintiffs when the plaintiffs knew about this claim, sat on their rights intentionally, and decided not to pursue them. It was prejudice for plaintiffs to sit back and throw darts at the wall, hoping that one sticks, and to pick and choose which claims to bring when out of a grab bag, as the district court noted. Because they knew about these claims. They knew that they had to bring them within 90 days. They chose not to. I'm looking at Judge Connelly's opinion. It is unfair to have United have to defend. Are you talking about the fees involved in having to defend repeated motion practice on a Title VII claim? It's the fees, but it's not only the fees. It's the fees, and it's the gamesmanship involved here by the plaintiffs' actions. And it's making United, as I said, show its hand in its arguments so that plaintiffs can continually go back and refine their complaint, and United can rebrief it again. There's also prejudice. Pecuniary loss can include prejudice, right? I'm sorry, Your Honor? Pecuniary loss could include prejudice. In other words, there's no problem, at least I'm not aware of any cases, that say that a district court finding that unnecessary briefing in a case is not prejudice to one side or the other. That's correct, Judge. I'm not aware of a case that says that it's not prejudice to have this type of unnecessary briefing. And, in fact, it's unnecessary to the court, too. It prejudices judicial resources to have to allow plaintiffs to pick and choose what claims to bring when, despite the passing of the limitations period. Judge Cannelli didn't mention any prejudice to the court, though. You agree with that? Judge Cannelli did not mention it. However, we did mention it in our appellate briefs. And let me ask you this. You don't dispute that Engstrom's first chance to bring the Federal Title VII claim was in that Second Amendment complaint, and from your perspective, that's where they blew it, right? Yes. You're not saying he passed up three chances to raise that claim, just one, right? He passed up the chance to raise that claim in his Second Amendment complaint. Correct. So that's the time period we're looking at, and you're saying it's that five-month delay. Yes, it's a five-month delay, but, again, it has to be considered in the context of what was going on in that time period. They knew they had those claims when they filed the Second Amendment complaint. There is no dispute about that. They admitted it in their briefs. They admitted it to the district court, and in their appellate briefs, they say that this was a strategic omission. So it's actually we've argued in our appellate briefs that this is actually the equivalent of waiver because it's an intentional relinquishment of a known right. They intentionally walked away from their known right to file Title VII claims in a timely manner in accordance with the statutory filing deadlines. And since we're asking for cases, you know, you're not claiming that there's a case saying they had to file that Title VII claim in their Second Amendment complaint. And you wouldn't agree that someone could take away from any opinion we write in this case that plaintiffs must bring particular claims at particular times in this scenario. So I guess I'm saying they had to file their Title VII claims in the Second Amendment complaint to be consistent with the 90-day time period that Title VII affords them to bring such claims once a notice of right to sue is issued. So the notice of right to sue was issued during this time period that they had to file their Second Amendment complaint. I believe they had 40 days from when the notice of right to sue was issued to still file their… I mean, he bought plaintiff's Relation Back theory, correct, and didn't find the Title VII claims time-barred, correct? Yes, but I think this is slightly different than Relation Back. I don't think the delay is excused by Relation Back here. Relation Back under Rule 15c of the Federal Rules of Civil Procedure is mandated, right, if certain criteria are met according to the rule. But leave to amend under Rule 15a provides courts with discretion to grant leave to amend. And while the analyses are independent of each other, so this means that a court may deny a motion for leave to amend under Rule 15a, even if the proposed amendments would relate back under Rule 15c, which is exactly what happened here. And Relation Back under Rule 15c and leave to amend under Rule 15a, neither of those rules provide for a license for gamesmanship, which is what we think the record shows here and what we think that the district court correctly looked at and found. We'd better talk about failure to accommodate before your time is up. You make much of the plaintiff's failure to mention Scripture when they were asking for their exemption. Should our court be evaluating the sufficiency of one's belief based on Scripture? What do we do with a religion that doesn't have Scripture, and how does that muster after Passorella? Yes, yes, and I don't think our brief is meant to suggest, nor should it be taken as suggesting, that a plaintiff must mention Scripture. I think what we were trying to say is in Passorella, the court held that a complaint at the pleading stage for a failure to accommodate has to allege sufficient facts to plausibly permit an inference that some aspect of the accommodation request is based on the employee's religious observance and practice or belief. And here, the plaintiffs did not satisfy that standard, because to satisfy that standard, you need to plead a connection or tie between your religious beliefs and your objections to vaccination. Here, all they included in their complaint was a bare conclusory allegation that I am Christian and I hold sincere religious beliefs against taking the vaccine. In the charges attached to their complaint, they said God, through the Holy Spirit, placed it upon my heart and conscience not to take the COVID-19 vaccine. How is that any different from Passorella, where the plaintiffs were saying, you know, through my prayer, I'm hearing from God, I have an objection? Yeah, the reason that there is a difference is because in Passorella, this court specifically found that the plaintiffs alleged that their vaccination objections were connected to their Christian beliefs regarding the sanctity of the human body and the body as a temple of the Holy Spirit. It was not just about prayer. It was about these beliefs that the plaintiffs were able to allege in their complaint in Passorella. And it's these additional facts about their religious beliefs that pushed the Passorella case over the plausibility threshold to allege that the exemption request was, in fact, based on an aspect of their religious beliefs. I see that I'm out of time. Unless there are any other questions, again, we ask the court to affirm the decision of the district court. Okay. Thank you, Ms. Carr. Thank you. Mr. McCoy. Yes. Thank you, Your Honor. If the court has any questions, I'll certainly answer them. Otherwise, I'll try to tackle some of the points made by opposing counsel. Okay. With respect to the claim of gamesmanship, I think that's certainly misconstruing the purpose here. There's no gamesmanship involved by the plaintiffs. In fact, I think that both the plaintiffs and myself do exactly what we are supposed to do in terms of refining claims once there are errors found with others. We narrow down as best as possible. And in this case, that's exactly what we did. We were told that the Florida Civil Rights Act claims are not sufficient and that the judge was not going to accept jurisdiction over these extraterritorial claims. So at that point, we are left with the Title VII claims for the plaintiffs. And we asserted those as soon as we were able to do at that time. And with respect to the issue that was just addressed by opposing counsel, what my clients did in their charge specifically where they tied their objections to the vaccination was directly related to their Christian beliefs. They specifically mentioned that, and, of course, through prayer. And prayer itself is exactly what Passerella had identified to say that that ties it back to Christian beliefs. That's their practice. That's what they did here. And they should be able to move forward with their claims, Your Honors. Okay. Thank you, Mr. McCoy, for the case we take under advisement.